IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher Lamar Victoria, a/k/a Christopher Lamar Victoria, #315620, a/k/a Christopher Victoria, # 1234801, | ) ) ) ) | C/A No.: 5:25-12719-JDA-KDW |
| Plaintiff, | ) ) | |
| | ) | REPORT & RECOMMENDATION |
| v. | ) ) | |
| Isaac Fekete and T. Olmeda, | ) ) | |
| Defendants. | ) ) | |

Christopher Lamar Victoria ("Plaintiff"), proceeding pro se, was a pre-trial detainee incarcerated in the Greenville County Detention Center during the time he alleges Defendants Isaac Fekete and T. Olmeda violated his civil rights. *See* Compl. at 5; ECF No 1.[1] On February 17, 2026, Defendants filed a Motion for Summary Judgment. ECF No. 26. Plaintiff filed his Response on May 27, 2026, and Defendants filed their Reply on April 1, 2026. *See* ECF Nos. 30; 31.[2] Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), this Magistrate Judge is authorized to review pretrial matters in cases involving pro se litigants and submit findings and recommendations to the District Court. This matter is now ripe for review.

---

[1] Defendant Isaac Fekete was improperly identified by Plaintiff as "Issac" Fekete. *See* Defs.' Br. at 1; ECF No. 26.

[2] Pursuant to Local Rule 7.07, a reply to a Motion is allowed, although discouraged. The Local Rules do not provide for Sur-Replies. A party may seek permission from the court to file an additional response or "sur-reply." *Perez v. S.C. Dep't of Labor, Licensing and Regulation*, No. 3:17-CV-3187-JFA, 2018 WL 2455093, at *4 n.10 (D.S.C. June 1, 2018). Plaintiff did not seek permission to file a sur-reply in this case, despite filing what he styled as a Sur Reply on April 23, 2026. *See* ECF No. 32. However, the undersigned, in her discretion, may consider any additional arguments made that address any novel arguments made in Defendants' Reply and will consider any additional information where appropriate.

I.     Factual Allegations

According to Mr. Victoria, on the morning of July 7, 2025, Defendants Fekete and Olmeda brought him into the Greenville County Detention Center (the "GCDC") incident to some sort of arrest. Mr. Victoria claims that Fekete placed the handcuffs on him in such a way that he found his arm to be placed in an awkward position. Compl. at 6. When Mr. Victoria brought this to Fekete's attention, Mr. Victoria alleges he was ignored. Instead, during processing, Mr. Victoria contends that Fekete placed his fingers on the fingerprint scanner in such a way that, coupled with the awkward placement of the handcuffs, caused Mr. Victoria pain. Compl. at 6. Mr. Victoria specifically alleges that both officers grabbed him, with one officer holding onto his arm, while the other officer forced Mr. Victoria's other arm upward to reach the scanner. *Id.* Mr. Victoria apparently cried in pain during the duration of the fingerprint processing. *Id.*

Mr. Victoria was apparently then taken back to "holding" to await booking. During this time, Mr. Victoria states that Fekete began to joke about what had just occurred and attempted to take a photograph of Mr. Victoria. Mr. Victoria tried to explain to Olmeda that the handcuffs were misplaced; however, Mr. Victoria contends he was ignored until a GCDC officer took custody of him. Mr. Victoria contends he had cuts and bruises from the handcuffs. As a result of this incident, Plaintiff states that he sustained minor cuts and lacerations to his wrist on his left and right arms, minor pain in his right wrist, and he received ibuprofen for 3 days. Compl. at 8.

In support of their Motion for Summary Judgment, Defendants produced several videos depicting the events immediately preceding, during, and after Mr. Victoria's arrest. While the undersigned will specifically address the contents of the videos where appropriate below, briefly stated, Mr. Victoria was arrested on July 7, 2025, in connection with an alleged theft. Once officers arrived at the scene, they observed Mr. Victoria on the ground, restrained by one or more unknown

2

individuals. *See* Fekete Body Camera Footage, 1:00-4:00, attached as Exhibit A to Defendants'

Motion, ECF No. 26-2. According to Mr. Victoria, he had been "roughed up" and chocked out by

these individuals. *See* Exhibit A, 3:45-4:30. He further alleged these individuals were "ganging

him." *See* Exhibit A, 4:45-4:55. A review of the body camera video from the scene of the arrest,

as well as footage of what occurred once Plaintiff arrived at the detention center, clearly shows

that officers were responding to an alleged theft, officers placed Mr. Victoria in handcuffs, and

officers transported him to the detention center. During this interaction, the video evidence reveals

Mr. Victoria to have been less than cooperative throughout the duration of events.

II.     Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion

either by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing

. . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is

to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

3

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own argument, affidavit, or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto,* 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.    Analysis

A.  Excessive Force Claims

1.  Officer Fekete's Placement of Handcuffs

Defendants argue that summary judgment is appropriate as to Mr. Victoria's allegations that Fekete applies excessive force when handcuffing Mr. Victoria. Plaintiff disagrees. Under 42 U.S.C. § 1983, relief may be sought when a plaintiff alleges the violation of a right secured by the

Constitution by a person acting under color of state law. *West v. Askins*, 487 U.S. 42, 48 (1988). The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Because Mr. Victoria was a pretrial detainee at the time of the alleged violation, his excessive force claim is properly brought under the Due Process Clause of the Fourteenth Amendment. *Coney v. Davis*, 809 F. App'x 158, 159 (4th Cir. 2020). To succeed on such a claim, Mr. Victoria, as a pretrial detainee, need only show that the alleged use of force purposely or knowingly used against him was objectively unreasonable. *Kingsley*, 576 U.S. at 397. In deciding whether the force was objectively unreasonable, the court must consider the evidence "from the perspective of a reasonable officer on the scene, including what the officers knew at the time, not with the 20/20 vision of hindsight." *Id.* The court need also account for the legitimate interests that stem from the need to manage the facility in which an individual is detained, appropriately deferring to policies and practices needed to preserve internal order and discipline and maintain institutional security. *Id.* Some factors to consider when deciding the reasonableness or unreasonableness of the use of force is the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made to temper or limit the force; the severity of the security problem; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.* (quoting *Graham*, 490 U.S. at 396).

Defendants Olmeda and Fekete provided video footage of both Mr. Victoria's arrest and his subsequent transport and booking into the detention center.[3] Mr. Victoria argues that the video

---

[3] The undersigned will briefly address Mr. Victoria's contention that the video was "redacted." *See* Pl.'s Br. at 1, 3; ECF No. 30. He provides no evidentiary support for this allegation, beyond pointing out that in one or more of the videos, the first few seconds are without sound. First, the

shows he complied with Defendants' commands. Pl.'s Br. at 1; ECF No. 30. Otherwise, Mr. Victoria's arguments focus mainly on his excessive force claims once he arrived at the GCDC and was subject to fingerprinting.

A review of the video footage at the time of Mr. Victoria's arrest supports a finding that summary judgment is appropriate as to any allegation that Defendant Fekete used excessive force when applying handcuffs. Fekete places Mr. Victoria in handcuffs after such time that Mr. Victoria was restrained by individuals at the scene. Mr. Victoria's detainment was without incident. Once he was handcuffed, Plaintiff did not indicate that he was in any sort of pain or that the handcuffs were improperly placed upon him. In fact, when Mr. Victoria was initially placed in the back of the patrol car, he ignored Fekete's several inquiries regarding whether Mr. Victoria needed an ambulance, after he stated that the individuals at the scene had "choked" him out. *See* Exhibit A at 8:40-9:05. Once the officers attempt to obtain a photograph of Mr. Victoria, he refused to cooperate. *See* Exhibit A at 15:35-16:00. From there, Mr. Victoria continually exclaimed "stop jacking me up" and resisting efforts to restrain him with a seatbelt prior to driving away. *See* Exhibit A at 16:00-17:00. However, throughout Mr. Victoria's obvious agitation while in the back of the patrol vehicle, he does not indicate he is in any pain due to the handcuffs. Further, once Defendants and Mr. Victoria arrived at GCDC, Defendant Olmeda places one or more fingertips in the handcuff to demonstrate to him they are not too tight. *See* Officer Olmeda Body Camera Video at :35-40, attached as Exhibit D to Defs.' Motion, ECF No. 26-5. Mr. Victoria further

---

issue with the sound does not suggest that the video was redacted. Second, the videos themselves appear to operate in a such a manner that the sound does not immediately begin recording when the video is engaged. In any event, Defendants refute this allegation. Plaintiff has no evidence to buttress this claim, and the observations which are presented on the video present no genuine dispute of fact as to whether summary judgment is appropriate in this case.

acknowledges that any alleged injuries were minor; moreover, Mr. Victoria admits that any injury was "de minimis." *See* Pl.'s Br. at 2, ECF No. 30; *see also* Pl.'s Sur Reply at 1, ECF No. 32.

Thus, any force used by Fekete to place Mr. Victoria in handcuffs was necessary and appropriate. *See Parson v. Miles*, 4:17-CV-00708-RBH, 2020 WL 58287, at *5 (D.S.C. Jan. 6, 2020) (noting that it is universally accepted that handcuffing is an appropriate safety measure incident to an arrest and will rarely constitute excessive force where the officers were justified in effecting the underlying arrest). Fekete's use of handcuffs to effectuate Mr. Victoria's arrest, as evidenced by the video footage, was objectively reasonable in light of the fact that he placed him in handcuffs without incident. The undersigned therefore recommends granting summary judgment in favor of Fekete as to this claim.

2. Fekete and Olmeda's Actions in Fingerprinting Plaintiff

Defendants next argue that they are entitled to summary judgment as to any claim that they used excessive force when fingerprinting Mr. Victoria. Mr. Victoria, in turn, contends that he was handcuffed in an awkward position, and due to the awkward positioning, Defendants forced his hands/fingers into a painful position to fingerprint him. Specifically, Plaintiff contends that the video "clearly shows Defendant Fekete grabbing Plaintiff's arm applying force and twisting while Defendant Olmeda pulls Plaintiff's hands toward the fingerprint machine." Pl.'s Br. at 1. Mr. Victoria argues that the video evidence supports his version of events, suggesting that the video shows him complying and asking Defendants to fix the handcuffs twice prior to Defendants "us[ing] force against him." Pl.'s Br. at 1. Mr. Victoria suggests that the fingerprinting process was completed by the GCDC and that his handcuffs were removed—thereby suggesting either that these Defendants did not need to fingerprint him, or that they could have removed his handcuffs prior to their process of fingerprinting Mr. Victoria.

The Fourth Amendment "allows police to take certain routine 'administrative steps incident to arrest,' including 'book[ing], photograph[ing], and fingerprint[ing]'" an individual accused of a crime. *Doe v. DeWees*, No. TDC-18-2014, 2020 WL 1331902, at *12 (D. Md. March 23, 2020) (quoting *Maryland v. King*, 569 U.S. 435, 461 (2013)). The undersigned has considered the arguments by both Mr. Victoria and Defendants to determine whether the force used to obtain his fingerprints reflected an intent to punish on the part of Defendants or was otherwise objectively unreasonable. The parties in this case have nearly diametrically opposed views on the presentation of the video evidence. In *Scott v. Harris*, the Supreme Court stated, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 379 (2007). Specifically, when a video "quite clearly contradicts the version of the story told by [the plaintiff]" a court should not adopt that version of events. *Scott*, 550 U.S. at 372, 378, 380. Here, the court has video evidence from more than one angle of Mr. Victoria's intake into GCDC.

The video reveals that Mr. Victoria actively resisted efforts by the officers to quickly and smoothly engage in the fingerprinting process. *See* Officer Feteke Fingerprint Body Camera at :30-2:20, attached as Exhibit C to Defs.' Motion, ECF No. 26-4. While it is indeed true that Mr. Victoria indicates he was "hurting," he also continues to pull away from the efforts of these officers to place his hands close to the fingerprint scanner. *Id.* The video further shows Olmeda utilizing what is properly described as a calm voice, explaining to Mr. Victoria that these Defendants were trying to obtain his fingerprints. *Id.* The video further depicts Defendant Olmeda pulling the fingerprint scanner away from the wall via a cord to try and move the scanner closer to Mr. Victoria's fingertips so that Olmeda and Fekete can take his fingerprints. *See* Exhibit D at 00-:21.

8

It is thus evident that Defendants sought to reduce any unneeded force to obtain Mr. Victoria's fingerprints while in handcuffs and limit the force necessary to accomplish this goal. Further, in reviewing all available video footage, the undersigned agrees with Defendants that the videos show Mr. Victoria actively resisting the process, while Defendants continued to fingerprint Mr. Victoria.[4] In so doing, while Defendants did use some measure of force to move Plaintiff's hands toward the fingerprinting device, the video evidence establishes that Defendants' use of this measure of force was not objectively unreasonable. Accordingly, the undersigned recommends granting summary judgment in favor to Defendants.

### B. Failure to Allege Constitutional Violation

Defendants generally allege that Mr. Victoria fails to allege the existence of a constitutional violation pursuant to 42 U.S.C. § 1983. Section 1983 provides a federal cause of action to redress constitutional harms committed under color of state law. *Smith v. Travelpiece*, 31 F.4th 878, 882-83 (4th Cir. 2022). To prevail on a § 1983 claim, one must show that (1) he was deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Defendants argue, and the undersigned agrees, that the video footage establishes that, even viewing the evidence in a light most favorable to Mr. Victoria, neither Defendant violated his constitutional rights afforded to him under the Fourth or Fourteenth Amendments. Mr. Victoria generally argues that Defendants should not have applied any force at all in the process of fingerprinting him, because he was fingerprinted by a

---

[4] Plaintiff argues that the fingerprinting process was procedurally improper, because Defendants should have removed his handcuffs and because GCDC staff were not present. *See* Pl.'s Sur Reply at 1; ECF No. 32; Pl.'s Br.at 2; ECF No. 30. However, Plaintiff does not provide any support for his contention regarding the appropriate procedure for fingerprinting at GCDC. Indeed, as previously pointed out, the fingerprinting process is part of the administrative steps taken incident to an arrest.

detention center officer. *See* Pl.'s Br. at 3; ECF No. 30. However, Plaintiff's argument ignores the fact that Defendants already placed him in handcuffs incident to an arrest; these Defendants were responding to a report of a potential theft, found Plaintiff at the scene, arrested him and placed him in handcuffs, and then proceed to transport him back to the GCDC. Mr. Victoria offers no evidence to support his contention that this process was procedurally improper. Conversely, Defendants establish that these steps were taken were pursuant to the administrative process that is part of an arrest. The video footage supports Defendants' explanation of the events that took place. While Mr. Victoria can be heard stating in the video that the handcuffs were hurting him, the video footage establishes Defendants did not violate Mr. Victoria's constitutional rights, and he admits that at most, he experienced de minimis injuries. Accordingly, the undersigned agrees that Defendants are entitled to summary judgment.

### C.  Qualified Immunity

Finally, the Defendants argue they are entitled to qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton*, 25 F.4th at 233 (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)). Here, the undersigned has determined that Mr.

Victoria has failed to establish any constitutional violation on the part of any of the Defendants. Accordingly, the undersigned recommends finding that Defendants are entitled to qualified immunity.

IV.     Conclusion and Recommendation

For the reasons stated above, the undersigned recommends Defendants' Motion for Summary Judgment, ECF No. 26, be granted.

IT IS SO RECOMMENDED.

June 9, 2026                                         Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).